# EXHIBIT A

MICHAEL K. JEANES
Clerk of the Superior Court
By Maria De La Cruz, Deputy
Date 01/09/2018 Time 14:07:18
Description                    Amount
--------- CASE# CV2018-09289 ----------
CIVIL NEW COMPLAINT            322.00

TOTAL AMOUNT                   322.00
         Receipt# 26348883

1   Israel G. Torres (#020303)
2   James E. Barton, II (#023888)
    Saman J. Golestan (#031710)
3   TORRES LAW GROUP, PLLC
    2239 West Baseline Road
4   Tempe, Arizona 85283
5   480.588.6120
    James@TheTorresFirm.com
6   Saman@TheTorresFirm.com

7   *Attorneys for Plaintiff*

8                 **ARIZONA SUPERIOR COURT**

9                  **MARICOPA COUNTY**

10

11                                      CV2018-092895
    CINDI TANNER, an individual      Case No.
12
                 Plaintiff,
13
                                      **COMPLAINT**
14  vs.

15  MARICOPA COUNTY COMMUNITY
    COLLEGE DISTRICT, a political
16  subdivision of Arizona; MARIA WISE, an
    individual and in her official capacity;
17  AND VIVIAN MIRANDA-
    STRAWBRIDGE, an individual and in her
18  official capacity;

19
                 Defendants
20

21

22      This complaint is a civil action under the Americans with Disabilities Act of 1990 ("the

23  ADA"), 42, U.S.C. §12132, the Rehabilitation Act of 1973 ("The Rehabilitation Act"), 29 U.S.C.

24  § 794, Intentional Infliction of Emotional Distress, Whistleblower Protection pursuant to A.R.S. §

25  38-532, and Wrongful Termination pursuant to A.R.S. § 23-1501(A)(3)(c), arising from the

26  unlawful discrimination and retaliation against Cindi Tanner ("Tanner"). As alleged with greater

27  specificity below, Defendant Maricopa County Community College District ("MCCCD, the
28

Administration") not only discriminated against Tanner, one of its employees, but also terminated her for reporting the administration's ADA and FERPA violations. The Administration created a working environment so hostile that Tanner's PTSD from an unrelated domestic violence incident was retriggered. Finally, the conduct of administration officials rose to the level of intentional infliction of emotional distress.

**PARTIES, JURISDICTION AND VENUE**

1. Cindi Tanner a resident of Arizona in Maricopa County.

2. Defendant Maricopa County Community College District (MCCCD or the "District") is a political subdivision of Arizona.

3. Defendant Maria Wise, EdD. is, and at all relevant times was, the Vice President of Academic & Student Affairs and Title IX Coordinator of the Maricopa Community College District.

4. Defendant Vivian Miranda-Strawbridge ("the Dean") is, and at all relevant times was, Dean of Student Services & Retention of the Maricopa Community College District.

5. This action arises under state law, and the U.S. Constitution. This Court has jurisdiction pursuant to A.R.S. § 38-532 and A.R.S. § 23-1501(A)(3)(c).

6. Maricopa County is the proper venue per A.R.S. § 12-401 as all parties reside and or conduct business within that county.

7. At all relevant times, Tanner was an employee of Defendant MCCCD.

**GENERAL ALLEGATIONS**

**Efforts to Notify MCCCD and Regulatory Agencies of Violations of ADA and other Statues**

8. Tanner is the former Disability Resources & Services (DRS) Coordinator II of MCCCD.

9. Tanner began working for Gateway Community College (GWCC) as the DRS Office Manager on April 25, 2014.

10. Tanner became a full-time employee beginning on January 4, 2017, and was promoted to Coordinator II.

11. During her time at GWCC, Tanner worked tirelessly to advocate for Gateway's disabled students, attempting to ensure they received the support mandated under state and federal law.

### Reckless Chronic Understaffing

12. During a significant portion of these incidents Tanner was the only full-time DRS employee responding to student needs.

13. On February 2, 2017, Tanner met with V.P. Wise to discuss the sheer volume of client needs exceeded the capacity of one person. Therefore mistakes were being made and student issues were falling to the wayside.

14. V.P. Wise cautioned Tanner of "learning [her] place" and discouraged her from reporting staff shortages.

15. Tanner questioned V.P. Wise, regarding who is Tanner's back up and why the Dean was not coordinating coverage as the previous DRS Manager James Rogers (J.R.) had done.

16. V.P. Wise refused to answer these questions, responding that she was uninterested about staffing shortages, and insisted that Tanner was hired full-time to coordinate the office.

17. On February 15, 2017, V.P. Wise would not address the understaffing issue because "that would take away from the education experience for our interns" despite remarking that being grossly understaffed was "bad practice."

18. On March 28, 2017, the Dean, seemingly confusing advising employees with DRS employees, suggested bringing in an untrained employee.

19. On April 3, 2017, Tanner was informed that she would be the only one to respond to student needs during the last two weeks of finals.

20. On May, 4, 2017, the Dean of Enrollment Management, Jake Rivera brought Dean Miranda-Strawbridge to Lisa Ford's private office. There they discussed the impact the lack of staff in the DRS office had on the Testing Center. Ms. Ford pointedly said "this is not Tanner's fault; you need to hire some people over there! No one person can handle everything that needs to get done!" The Dean claimed it was a budget issue to which both Ms. Ford and Mr. Rivera countered that was an urgent need and that funds were available.

**Alerting Administration of Numerous Specific Failures to Accommodate**

21. On February 6, 2017, Tanner notified The Dean that nursing students who had an accommodation to record lectures were having that accommodation interfered with by the nursing instructors.

22. On February 7, 2017, Tanner noted that prohibiting students from properly using the equipment provided by their accommodation was potentially an ADA violation.

23. Tanner made it clear that the students should be allowed to use their digital voice recorders on their desks rather than concealed thereby lessening their effectiveness.

24. On February 13, 2017, Tanner personally alerted the Dean to the fact that the ADA requires a response to student disclosures "without delay." The Dean replied that she was too busy to comply with this requirement.

25. On February 27, 2017, Tanner informed the Dean that the ASU social work intern could not serve as reader for a nursing student, explaining that the only individual with the proper background in medical terminology necessary was Tanner herself. The Dean claimed that it was very important for the interns to have an "educational experience to reflect on," rejecting Tanner's warning to serve the students well.

26. In February and March of 2017, Tanner notified the Dean that denying Chaunell Roberson the use of her, already awarded, flexible attendance accommodation for a serious medical condition, violated the ADA.

27. On March 31, 2017, the Dean then instructed DRS to notify the student that she would not pass the class.

28. Between December 2016, through March 2017, Tanner altered the Dean of procedural violations or inadequate service provided to the following students: Thea Wilson, Eric Meyers, Tiffany Sandler, Adam Flower, Reham Farid, Jennifer Baldamenti, Iman Zamzam, Jeffery Scott, Erica McKamie, Richard Martinez, Kelvin Willams, and Judith Morales.

**Alerting the Administration of FERPA Violations**

29. On February 6, 2017, the Dean instructed Tanner to email confidential student disability documentation to her via campus email. When Tanner did not transmit the information in this fashion, the Dean accused her of intentionally interfering with the working relationship.

30. Rebecca Felice, Tanner's counterpart at the Central City Campus, also identified the issue.

31. The FERPA violations persisted until the Dean gained access to the disability database and beyond.

32. Additionally, Tanner identified FERPA violations in a letter shortly before she was fired.

**Contacting Gene Heppard Regarding Discrimination**

33. In order to seek advice on a student, Tanner followed best practices and protocol and contacted Gene Heppard, who worked within the District at Phoenix College.

34. On February 9 2017, Tanner sent Heppard a text requesting guidance regarding a student who was being discriminated against by the same instructor who had bullied him a year ago; a case that Heppard had assisted Frank Zamora with.

35. This text was shared with someone at PCC and ultimately shared with V.P. Wise and the Dean.

36. Instead of correcting the discriminatory behavior, management severely reprimanded Tanner, claiming her actions were grossly unprofessional.

37. Tanner was not notified that, at the time of this text that the Dean would be the decision-maker for all DRS issues as J.R. had not yet declared FMLA.

38. When questioned about this, neither V.P. Wise nor the Dean, responded.

### Filing a Complaint with the Office for Civil Rights

39. On March 24, 2017, Tanner filed a complaint with the Department of Education's Office for Civil Rights.

40. In that complaint she alleged that on March 23, 2017, the Dean performed an evaluation and intake interview that she was not qualified to perform, and then prohibited Tanner from directing the Dean to AHEAD literation and standards.

41. Within the complaint, Tanner explicitly identified the Dean's harsh treatment of the student as a source of concern writing:

> The original trauma event this student survived is horrific: I cannot stress this enough. No one even casually acquainted with human decency let alone ADA and disability law and culture would ever consider psychologically assaulting a survivor in the unethically invasive and morbidly dismissive manner that Dean Vivian did as reported to me by the student.

42. Tanner also alerted the agency to the hostile environment the administration had created toward those who raised their concerns.

43. Tanner noted that on February 23, 2017, Shannon Ridgeway-Monaco with CSC suggested that Tanner might qualify for whistle-blower protection and that she would look into it. Unfortunately, no formal follow up occurred.

44. In the complaint, Tanner specifically asked the agency to afford her whistle-blower protection.

45. Tanner concludes, "I am profoundly all alone."

46. On April 2017, Tanner authorized OCR to reveal her identity to further OCR's investigation and enforcement activities.

47. Despite having provided multiple updates to OCR, on May 14, 2017, in response to a request for information from Sandra Sanchez, Tanner provided a thirty-four page, single spaced document detailing the abusive and discriminatory behavior being perpetrated by the MCCCD administration at Gateway Community College DRS, particularly after former Manager J.R. was forced into FMLA leave.

48. Remarkably, OCR closed Tanner's complaint on the grounds that the school was investigating the matter.

49. Tanner received notice of the investigation five days after she was fired in response to raising these and other concerns.

50. On May 28, 2017, Tanner notified the administration via the Dean of the numerous violations of the ADA, regulations based on the ADA, best practices as outlines by AHEAD, FERPA, Title IX, and state law concerning work place harassment and bullying.

**Retaliation Taken Against Tanner in Response**

51. In early February 2017, both the Dean and V.P. Wise, informed Tanner that she was no longer allowed to moderate student equipment loans.

52. Later that same month, on February 27th, during a Workplace Expectations meeting with the Dean, the Dean added financial/HMS responsibilities to Tanner's job descriptions.

53. On April 14, 2017 the Dean reduced Tanner's duties to calendaring and managing documentation, explicitly forbidding her from explaining accommodations and services to students.

54. Four days later, on April 18 the Dean further restricted Tanner, directing her to no longer include faculty misconduct in her student case notes.

55. V.P. Wise affirmed this practice of dismissing of faculty misconduct on April 19.

56. The instruction to hide faculty misconduct were again repeated on April 28 and May 11.

57. On March 11, 2017 the Dean denied any of the changes to Tanner's job description.

58. The original description was drafted in August 2016.

59. MCCCD has records demonstrating the changes implemented by the Dean and V.P. Wise.

**Bullying and Unwarranted Reprimands**

60. The administration frequently reprimanded Tanner for "policing accommodations," alleging that it was not her job to do so.

61. On February 7, 2017, in response to Tanner's advocating for the nursing students to not have their accommodation interfered with, the Dean accused Tanner of unprofessional behavior and claimed Tanner's efforts were "policing accommodations" and "out of scope."

62. The Dean continually repeated this accusation—doing so on February 10, 13, 27, April 11 and 19.

63. On May 3, 2017 the Dean sent Tanner an e-mail that listed multiple issues that allegedly demonstrated Tanner's time mismanagement.

64. Included in this email was Tanner's absence during Spring Break due to a family emergency.

65. The emergency involved Tanner's son attempting to take his own life.

66. The Dean was aware of this fact, and yet still scolded Tanner for taking time to handle her son's suicide attempts.

67. On May 5, 2017, the Dean accused Tanner of wrong-doing in front of a colleague, Lisa Ford.

68. Tanner's apparent offense amounted to leaving her post for a few minutes, allegedly being frequently absent, and not finding replacements for her absences "that are impacting other individuals and departments across campus."

69. Like above, included in these supposedly excessive absences, was Tanner responding to her son's suicide attempts.

70. On May 9, 2017, the day of Tanner's ASU graduation, the Dean berated her due to some note takers that had not been paid.

71. Tanner was aware of the issue and had repeatedly notified the Dean of the difficulty she was having resolving it on February, 7th, March 28th, April 4th and April 23rd earlier that year.

72. Finally on June 15, 2017 Tanner was terminated, before the probationary period had even ended.

73. Her termination was authorized by Vice Chancellor for Human Resources LaCoya Shelton and at the recommendation of President Gonzales.

**Notice of PTSD**

74. On April 23, 2017, Tanner received a letter from Surge Points documenting her PTSD treatment, which she immediately submitted to MCCCD H.R.

75. On or about May 1, 2017, Tanner submitted an Employee Accommodation Request asking for an accommodation for her Post Traumatic Stress Disorder (PTSD).

76. Tanner detailed in part the job difficulties she was experiencing in her request:

> I perform my job perfectly except when I am subjected to a hostile work environment that features chronic and aggressive threats, accusations of wrong-doing, demeaning language, bullying, physical posturing, and overt attempts to intimidate me sometimes multiple times a day, week after week since 2-7-17, the day after my supervisor James A. Rodgers MSW, DRS Manager left for medical reasons.

77. Additionally, Tanner provided the following as her requested accommodation:

A safe and equitable working environment will allow me to thrive as the faithful public servant I have proven myself to be over the past three years. I love my job, I love the students, I love the campus community and I respect the intimate opportunity to inspire students in higher education that a small community college fosters. I have a close working relationship with many on my own campus and with DRS specialists across the district and a personal relationship with some of them. My reputation for ethical and competent support in disability services can easily be verified by professionals across the district; but at my home campus I am the subject of continual correction, criticism, and outright censure. One of the most significant changes for a safe environment will be to allow me to perform my duties in compliance with the ADA in an ADA compliant environment. Foremost in compliance will be a reversal of a directive I received 4-14-17 that forbade me from explaining disability services and accommodations to clients who inquire, as well as recent directives that censure my entry of student case notes. My obedience to new limitations renders me complicit in risk.

78. Tanner was terminated before she received a response regarding her request for accommodation.

79. Tanner continued to suffer from PTSD at the point of her termination.

**Uncompensated Hours Worked for Employer**

80. From January 4 to February 8, 2017, Tanner worked 2.5 hours per day above and beyond her 40 hour work week, which totals to 50 hours of unpaid time.

81. Since any time above 40 hours must be compensated as time and a half, Tanner was effectively uncompensated for 75 hours.

82. At her effective hourly rate of $16.80 per hour, and accounting for treble damages under Arizona law, Tanner is entitled to $3,780.00

83. For three-quarters of 2016, Tanner worked at her desk from 7:00 am until 6:00 or 6:30 pm.

84. Despite this Tanner was only paid for 25 hours per week.

85. Tanner was therefore unpaid for 15 hours for 39 weeks, totaling at 585 unpaid hours.

86. Accounting for her wages at $13.00 per hour and treble damages, Tanner was uncompensated for $22,815.00.

-10-

87. It is unlikely that Tanner will be able to find a replacement position, as her work at MCCCD was truly fulfilling, even if the environment was toxic.

## FIRST CLAIM FOR RELIEF

### ADA & Rehabilitation Act Retaliation

88. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

89. Under the Americans with Disabilities Act, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

90. Furthermore, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

91. Tanner's termination and the adverse treatment she suffered before then, were all in response to her "having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]."

92. Tanner was terminated a mere 20 days after her letter to the administration.

93. The same standards apply to the Rehabilitation Act as they do to the ADA.

94. Tanner's termination came only 45 days after she requested an accommodation for her diagnosed PTSD and before any formal response by MCCCD.

95. This establishes separated ADA and Rehabilitation Act retaliation claims.

## SECOND CLAIM FOR RELIEF

### Whistleblower Protection & Wrongful Termination

96. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

-11-

97. "It is a prohibited personnel practice for an employee who has control over personnel actions to take reprisal against an employee for a disclosure of information of a matter of public concern by the employee to a public body that the employee reasonably believes evidences: A violation of any law [or] Mismanagement, a gross waste of monies or an abuse of authority." A.R.S. § 38-532.

98. An employee may not be discharged in retaliation for disclosing that they have information (or a reasonable belief) that the employer has violated, is violating or will violate an Arizona statute of constitutional provision.

99. This disclosure is only protected if made either to the employer (or to their representative who the employee reasonably believes has the authority to take action) or to a public entity, such as a state agency. Ariz. Rev. Stat. § 23-1501(3)(c)(ii).

100. Tanner reported MCCCD's violations to state agencies and her employer.

101. In addition to enduring an unbelievably hostile work environment, Tanner was ultimately terminated for reporting MCCCD's ADA violations.

102. Pursuant to A.R.S. § 23-1501(A)(3)(c), an employee has a claim against an employer for termination of employment if the employer has terminated the employment relationship of an employee in retaliation for the employee's refusal to violate state law or disclosing to the employer that the employer has violated, is violating or will violate state law.

103. Tanner's termination was in direct retaliation for her refusal to violate the law concerning the education of Gateway's disabled students.

### THIRD CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

104. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

-12-

105. In order to establish intentional infliction of emotional distress, Plaintiff must show: (1) the conduct by the defendant was extreme and outrageous; (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and (3) severe emotional distress must indeed occur as a result of defendant's conduct. *Ford v. Revlon,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987).

106. Much of the vicious treatment inflicted on Tanner would qualify as actionable, but the personal attacks she endured following her return from caring for her son after his multiple suicide attempts were truly extreme and outrageous.

107. The individual actions taken by V.P. Wise and the Dean hold them accountable for Tanner's emotional distress.

108. V.P. Wise and the Dean knew or should have known that their actions would cause Tanner emotional distress.

109. Additionally the administration knew or should have known of the harassment V.P. Wise and the Dean inflicted on Tanner.

110. Respondeat superior holds an employer vicariously liable for the actions of its employees when those employees are acting within the scope of their employment. *Engler v. Gulf Interstate Engineering, Inc.*

111. These actions occurred during V.P. Wise and the Dean's working hours, within their typical managerial duties and were ostensibly in furtherance of the Employer's interest in their positions as Vice President of Academic & Student Affairs and Title IX Coordinator, and Dean of Student Services & Retention, respectively.

112. Tanner notified the MCCCD of the harassment she endured within the complaint she filed at MCCCD's Office of Civil Rights on March 24, 2017, later adding more to her account on May 14 2017, after a request from the OCR.

-13-

113. The administration failed to respond to the complaints Tanner posed not only for the harassment she was personally experiencing, but also failed to respond to the various ADA violations that Tanner identified.

114. Therefore under respondeat superior, MCCCD is vicariously liable for the intentional emotional distress they inflicted on Tanner through their employees actions and personally liable through their failure to respond to the harassment after Tanner reported it to the administration.

115. As a result of the hostile work environment that V.P. Wise, the Dean and the administration created, Tanner was diagnosed work related PTSD.

## FOURTH CLAIM FOR RELIEF

### Minimum Wage and FLSA

116. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

117. Tanner is not an exempt employee under the FLSA.

118. She worked numerous unpaid hours for MCCCD.

119. MCCD violated FLSA and Arizona Minimum Wage Act, A.R.S. § 23-364.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Order Defendant to make whole Cindi Tanner, by providing her appropriate back pay and compensatory damage payments in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of its unlawful practices complained above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

B. An order awarding Plaintiff reasonable attorney's fees and costs; and

C. Such other and further relief as may be appropriate.

-14-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated this 9th day of January, 2018

James E. Barton II
Israel G. Torres
Saman J. Golestan
Torres Law Group, PLLC
2239 W. Baseline Road
Tempe AZ, 85283
*Attorneys for Plaintiff*

-15-

# EXHIBIT B

1   Israel G. Torres (#020303)
2   James E. Barton II (#023888)
    Saman J. Golestan (#031710)
3   Torres Law Group, PLLC
    2239 W. Baseline Road
4   Tempe AZ, 85283
5   *Attorneys for Plaintiff*

JAN - 9 2018   FILED 2:34 PM

MICHAEL K. JEANES, Clerk
By U De La Cruz
Deputy

6                      **ARIZONA SUPERIOR COURT**

7                        **MARICOPA COUNTY**

8
                                         CV2018-092895
9
10  CINDI TANNER, an individual          ))   **Case No.:**

11              Plaintiff,               )    **CERTIFICATE OF COMPULSORY
                                              ARBITRATION**
12  vs.                                  )

13  MARICOPA COUNTY COMMUNITY            )
14  COLLEGE DISTRICT, et al;             )

15              Defendants               )
16

17        Now Comes Plaintiff herein, by and through counsel undersigned, and hereby file her

18  Certificate of Compulsory Arbitration.

19
20        The undersigned certifies that the largest award sought by the complainant, including

21  punitive damages, but excluding interest, attorney's fees and costs exceed the limits set by Local

22  Rule for compulsory arbitration. Accordingly, this case is ___not___ subject to the Uniform Rules of

23  Procedure for Arbitration.

24
25
26
27                              Dated this 9th of January, 2018
28

                                      1

1

**TORRES LAW GROUP, PLLC**

2

3

4

James E. Barton II
Israel G. Torres
Saman J. Golestan
Torres Law Group, PLLC
2239 W. Baseline Road
Tempe AZ, 85283
*Attorneys for Plaintiff*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT C

**In the Superior Court of the State of Arizona**
**In and For the County of** Maricopa

Case Number _____

Civ CV2018-092895
(Ple

Plaintiff's Attorney James E. Barton II

Attorney Bar Number #023888

Is Interpreter Needed?  ☐ Yes  ☒ No
If yes, what language:

JAN - 9 2018    FILED 2:34PM
MICHAEL K. JEANES, Clerk
By U De La Cruz
Deputy

| Plaintiff's Name(s): (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|
| Cindi Tanner | 2239 W. Baseline Rd. Tempe, AZ 85283 | | |

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)    Maria Wise, Vivian Miranda-Strawbridge, Maricopa County Community College District

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT:    ☐ Temporary Restraining Order    ☐ Provisional Remedy    ☐ OSC

☐ Election Challenge    ☐ Employer Sanction    ☐ Other _____ (Specify)

☐ RULE 8(h) COMPLEX LITIGATION APPLIES. Rule 8(h) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.

(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category.)

☐ THIS CASE IS ELIGIBLE FOR THE COMMERCIAL COURT UNDER EXPERIMENTAL RULE 8.1. (Maricopa County only.) Rule 8.1 defines a commercial case and establishes eligibility criteria for the commercial court. Generally, a commercial case primarily involves issues arising from a business contract or business transaction. However, consumer transactions are not eligible. A consumer transaction is one that is primarily for personal, family or household purposes. **Please review Rule 8.1 for a complete list of the criteria.** See http://www.superiorcourt.maricopa.gov/commercial-court/. You must check this box if this is an eligible commercial case. **In addition, mark the appropriate box below in the "Nature of Action" case category.** The words "commercial court assignment requested" must appear in the caption of the original complaint.

## NATURE OF ACTION

(Place an "X" next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**

☐101 Non-Death/Personal Injury
☐102 Property Damage
☐103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐111 Negligence
☐112 Product Liability – Asbestos
☐112 Product Liability – Tobacco
☐112 Product Liability – Toxic/Other
☐113 Intentional Tort

☐114 Property Damage
☐115 Legal Malpractice
☐115 Malpractice – Other professional
☐117 Premises Liability
☐118 Slander/Libel/Defamation
☐116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐121 Physician M.D.    ☐123 Hospital
☐122 Physician D.O.    ☐124 Other

## 130 CONTRACTS:

- ☐ 131 Account (Open or Stated)
- ☐ 132 Promissory Note
- ☐ 133 Foreclosure
- ☐ 138 Buyer-Plaintiff
- ☐ 139 Fraud
- ☐ 134 Other Contract (i.e. Breach of Contract)
- ☐ 135 Excess Proceeds-Sale
- ☐ Construction Defects (Residential/Commercial)
  - ☐ 136 Six to Nineteen Structures
  - ☐ 137 Twenty or More Structures

## 150-199 OTHER CIVIL CASE TYPES:

- ☐ 156 Eminent Domain/Condemnation
- ☐ 151 Eviction Actions (Forcible and Special Detainers)
- ☐ 152 Change of Name
- ☐ 153 Transcript of Judgment
- ☐ 154 Foreign Judgment
- ☐ 158 Quiet Title
- ☐ 160 Forfeiture
- ☐ 175 Election Challenge
- ☐ 179 NCC-Employer Sanction Action
  (A.R.S. §23-212)
- ☐ 180 Injunction against Workplace Harassment
- ☐ 181 Injunction against Harassment
- ☐ 182 Civil Penalty
- ☐ 186 Water Rights (Not General Stream Adjudication)
- ☐ 187 Real Property
- ☐ Special Action against Lower Courts
  (See lower court appeal cover sheet in Maricopa)

- ☐ 194 Immigration Enforcement Challenge
  (§§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

- ☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)
- ☐ 150 Tax Appeal
  (All other tax matters must be filed in the AZ Tax Court)
- ☐ 155 Declaratory Judgment
- ☐ 157 Habeas Corpus
- ☐ 184 Landlord Tenant Dispute- Other
- ☐ 190 Declaration of Factual Innocence
  (A.R.S. §12-771)
- ☐ 191 Declaration of Factual Improper Party Status
- ☐ 193 Vulnerable Adult (A.R.S. §46-451)
- ☐ 165 Tribal Judgment
- ☐ 167 Structured Settlement (A.R.S. §12-2901)
- ☐ 169 Attorney Conservatorships (State Bar)
- ☐ 170 Unauthorized Practice of Law (State Bar)
- ☐ 171 Out-of-State Deposition for Foreign Jurisdiction
- ☐ 172 Secure Attendance of Prisoner
- ☐ 173 Assurance of Discontinuance
- ☐ 174 In-State Deposition for Foreign Jurisdiction
- ☐ 176 Eminent Domain– Light Rail Only
- ☐ 177 Interpleader– Automobile Only
- ☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- ☐ 183 Employment Dispute- Discrimination
- ☒ 185 Employment Dispute-Other
- ☐ 195(a) Amendment of Marriage License
- ☐ 195(b) Amendment of Birth Certificate
- ☐ 163 Other _____
  (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- ☐ Antitrust/Trade Regulation
- ☐ Construction Defect with many parties or structures
- ☐ Mass Tort
- ☐ Securities Litigation with many parties
- ☐ Environmental Toxic Tort with many parties
- ☐ Class Action Claims
- ☐ Insurance Coverage Claims arising from the above-listed case types
- ☐ A Complex Case as defined by Rule 8(h) ARCP

## Additional Plaintiff(s)

_____

_____

## Additional Defendant(s)

_____

_____

# EXHIBIT D



**Process Servers**

MICHAEL K. JEANES, CLERK
BY ⟨signature⟩ DEP
D. HILL. FILED

**18 JAN 12 PM 3: 12**

## SUPERIOR COURT OF ARIZONA - MARICOPA COUNTY

CINDI TANNER
Plaintiff,

vs.

MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT ET AL.
Defendant,

**Case No.: CV2018-092895**

**PROOF OF SERVICE**

Came to hand on <u>1/9/2018</u> at <u>4:19 PM</u> a true copy of the below referenced documents.

The undersigned is over the age of 18 years and not a party to the action. The undersigned is qualified and appointed under ARCP §4(d) & §4(e) to serve legal process within the State of Arizona.

**SERVED On 01/10/2018 at 12:01 PM, the undersigned served copies of:**
**SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION**

**Upon: MARIA L. WISE**
**At: 108 N 40TH STREET, PHOENIX, AZ 85034**

**In the following manner:**

**CORPORATE, BUSINESS OR GOVERNMENT SERVICE** by leaving a copy of the legal process with:
**VICTORIA ROBLES** Title):**HUMAN RESOURCES MANAGER**, a person authorized by appointment or by law to accept service and informing that person of the contents thereof.
Description:
Gender: **Female**   Race/Skin: **Hispanic**   Age: **40+-**   Weight: **130+-**   Height: **5'4"+-**   Hair: **Black**   Other:

**I declare under penalty of perjury under the laws of the State of Arizona that the foregoing information contained in the Proof of Service is true and correct. [ARCP Rule 80(i)]**

SIGNED, ⟨signature⟩
**KARL LETT,**

Client File #:

Number: **11728**

**Private Process Server ID # PN-201600001**
**,PINAL County**

*ASAP Serve, LLC 1837 S. MESA DR. #C102, MESA AZ 85210 PH:480-821-1552*

# EXHIBIT E



**Process Servers**

MICHAEL K. JEANES, CLERK
BY ~~D. Hill~~ DEP
D. HILL, FILED

**18 JAN 12 PM 3: 12**

## SUPERIOR COURT OF ARIZONA - MARICOPA COUNTY

CINDI TANNER
Plaintiff,

vs.

MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT ET AL.
Defendant,

**Case No.: CV2018-092895**

**PROOF OF SERVICE**

Came to hand on 1/9/2018 at 4:07 PM a true copy of the below referenced documents.

The undersigned is over the age of 18 years and not a party to the action. The undersigned is qualified and appointed under ARCP §4(d) & §4(e) to serve legal process within the State of Arizona.

**SERVED On 01/10/2018 at 12:01 PM, the undersigned served copies of:**
**SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION**

**Upon: VIVIAN MIRANDA-STRAWBRIDGE**
**At: 108 N 40TH STREET, PHOENIX, AZ 85034**

        In the following manner:

**CORPORATE, BUSINESS OR GOVERNMENT SERVICE** by leaving a copy of the legal process with:
**VICTORIA ROBLES** Title):**HUMAN RESOURCES MANAGER**, a person authorized by appointment or by law to accept service and informing that person of the contents thereof.
**Description:**
Gender: **Female**   Race/Skin: **Hispanic**      Age: **40+-**        Weight: **130+-**   Height: **5'4"+-**   Hair: **Black**        Other:

**I declare under penalty of perjury under the laws of the State of Arizona that the foregoing information contained in the Proof of Service is true and correct. [ARCP Rule 80(i)]**

SIGNED, _____
                **KARL LETT,**

**Client File #:**

Number: **11727**        **Private Process Server ID # PN-201600001**
                                        **,PINAL County**

*ASAP SERVE, LLC 1837 S. MESA DR. #C102, MESA AZ 85210 PH:480-821-1552*

# EXHIBIT F

**ASAP Serve**
**Process Servers**

MICHAEL K. JEANES, CLERK
BY ~~D. Hill~~ DEP
D. HILL, FILED

**18 JAN 12 PM 3: 12**

## SUPERIOR COURT OF ARIZONA - MARICOPA COUNTY

CINDI TANNER
Plaintiff,

vs.

MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT ET AL.
Defendant,

**Case No.: CV2018-092895**

**PROOF OF SERVICE**

Came to hand on <u>1/9/2018</u> at <u>4:27 PM</u> a true copy of the below referenced documents.

The undersigned is over the age of 18 years and not a party to the action. The undersigned is qualified and appointed under ARCP §4(d) & §4(e) to serve legal process within the State of Arizona.

**SERVED On 01/10/2018 at 11:37 AM, the undersigned served copies of:**
**SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION**

**Upon: MARICOPA COMMUNITY COLLEGE DISTRICT**
**At: 2411 W. 14TH ST. , TEMPE, AZ 85281**

      **In the following manner:**

**CORPORATE, BUSINESS OR GOVERNMENT SERVICE** by leaving a copy of the legal process with:
**DANAY BELL** Title):**PARALEGAL**, a person authorized by appointment or by law to accept service and informing that person of the contents thereof.
**Description:**
Gender: **Female**   Race/Skin: **Black**        Age: **35+-**      Weight: **120+-**   Height: **5'7"+-**   Hair: **Black**        Glasses:**No**
Other:

**I declare under penalty of perjury under the laws of the State of Arizona that the foregoing information contained in the Proof of Service is true and correct. [ARCP Rule 80(i)]**

SIGNED, _____
**KARL LETT,**

**Client File #:**

Number: **11729**

**Private Process Server ID # PN-201600001**
**,PINAL County**

*ASAP Serve, LLC 1837 S. MESA DR. #C102, MESA AZ 85210 PH:480-821-1552*

# EXHIBIT G

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
M. King, Deputy
1/18/2018 12:36:00 PM
Filing ID 9009962

# UDALL|SHUMWAY
### COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

David R. Schwartz - #009264
das@udallshumway.com
Attorneys for Defendant Maricopa
County Community College District

## ARIZONA SUPERIOR COURT

## MARICOPA COUNTY

| | |
|---|---|
| CINDI TANNER, an individual, | NO. CV 2018-092895 |
| Plaintiff, | **NOTICE OF APPEARANCE** |
| v. | |
| MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, a political subdivision of Arizona; MARIA WISE, an individual and in her official capacity; VIVIAN MIRANDA-STRAWBRIDGE, an individual and in her official capacity, | (Assigned to the Honorable Joshua Rogers) |
| Defendants. | |

Notice is hereby given of the appearance in this action of attorney David R. Schwartz and the law firm of Udall Shumway, PLC as the attorneys-of-record for Defendant Maricopa County Community College District.

DATED: January 18, 2018.

UDALL SHUMWAY PLC

_/s/ David R. Schwartz_
David R. Schwartz
1138 North Alma School Road
Suite 101
Mesa, AZ  85201
Attorneys for Defendant Maricopa County
Community College District

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2018, I electronically lodged the attached document using Turbo Court for filing and transmitted the document as stated below:

Via regular mail to:

Israel G. Torres
James E. Barton, II
Saman Golestan
TORRES LAW GROUP, PLLC
2239 W. Baseline Rd.
Tempe, AZ  85283
Attorneys for Plaintiff


    /s/ Kimberly Kershner


5087501.1
109883.022

2